IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| DENIM NORTH AMERICA HOLDINGS, LLC and DENIM NORTH AMERICA, LLC, | * * * |
| Plaintiffs, | * |
| vs. | CASE NO. 4:10-CV-45 (CDL) * |
| SWIFT TEXTILES, LLC, GALEY & LORD, LLC, and PATRIARCH PARTNERS, LLC, | * * |
| Defendants. | * |

O R D E R

Plaintiffs seek remand of this removed action to state court, contending that complete diversity of citizenship does not exist among the parties. Specifically, Plaintiffs maintain that Plaintiff Denim North America, LLC ("DNA") and Defendant Swift Textiles, LLC ("Swift") are both citizens of the same state for diversity purposes. Defendants concede that both DNA and Swift share citizenship in a common state for purposes of diversity jurisdiction; however, Defendants argue that DNA was fraudulently joined as a party in this action and that its citizenship must be ignored in determining whether complete diversity exists among the parties. It is undisputed that if DNA's citizenship is ignored, complete diversity of citizenship exists among the remaining parties, and Plaintiff's motion for remand must be denied. For the following reasons, the Court finds that for purposes of subject matter jurisdiction, DNA's citizenship must be ignored due to fraudulent joinder. Therefore,

Plaintiffs' Motion for Remand (ECF No. 9) is denied. The Court also denies Defendants' Rule 41(d) Motion for Costs (ECF No. 14).

BACKGROUND

This action arises from a dispute between the Plaintiffs, Denim North America Holdings, LLC ("Holdings") and DNA, and the Defendants, Galey & Lord, LLC, Patriarch Partners, LLC, and Swift. DNA, the Plaintiff that Defendants contend was fraudulently joined to destroy federal diversity jurisdiction, is a limited liability company with two members, each with a 50% ownership interest. Those two members are Holdings, the other Plaintiff in this action, and Swift, one of the Defendants in this action. Therefore, DNA is attempting to assert a direct action against one of its 50% owners. To complicate matters further, in establishing DNA, the two owners—Holdings and Swift—agreed in a written operating agreement that each would appoint four managers that would manage DNA. Notice of Removal Ex. F, Owen Aff. Ex. 1, Operating Agreement of Denim North America, LLC at 8 § 2.02, ECF No. 2-1 [hereinafter Operating Agreement]. That Operating Agreement further provides that a majority of those managers must approve most management decisions. *Id.* at 8-10 §§ 2.01, 2.03. The managers of DNA are specifically authorized to retain legal counsel. *Id.* at 10 § 2.03(h). It is undisputed, however, that a majority of DNA's managers did not approve the filing of this action by DNA against one of its 50% owners. Therefore,

2

Defendants argue that DNA is fraudulently joined as an improper party in this action.

Plaintiffs respond with two affidavits from DNA's president, Larry Galbraith, which state that he authorized the filing of this action on behalf of DNA. Pls.' Mot. for Remand Attach. 2, Galbraith Aff. ¶ 3, ECF No. 9-2; Pls.' Reply in Supp. of Mot. For Remand Attach. 1, 2d Galbraith Aff. ¶¶ 4-10, ECF No. 15-1. Plaintiffs argue that Galbraith was not required to secure the concurrence of a majority of the managers to institute this action because he had previously retained legal counsel in other unrelated matters without the express concurrence of a majority of the managers. Plaintiffs also maintain that the Operating Agreement authorizes the delegation of the authority to retain legal counsel to the president. The Operating Agreement does generally provide that a majority of the managers may delegate certain management functions to various officers. Operating Agreement at 12-13 § 2.13. Specifically, with regard to the president, the Operating Agreement states:

> The President shall be the Chief Executive Officer responsible for the general and active management of the operation of the Company subject to the authority of the Members. The President shall be responsible for the administration of the Company, including general supervision of the policies of the Company and general and active management of the financial affairs of the Company, and shall execute agreements, mortgages, or other contracts in the name and on behalf of the Company. The President shall be appointed by Holdings so long as Holdings owns 50% or more of the Membership Interest. The initial President shall be Larry L. Galbraith.

*Id.* § 2.13(a).

3

Plaintiffs contend that the delegation of certain management responsibilities to Galbraith as president of DNA in the Operating Agreement, combined with Galbraith's previous course of conduct in retaining legal counsel without the express approval of a majority of DNA's managers, authorized Galbraith to institute this action by DNA against its 50% owner, Swift. Defendants argue that the Operating Agreement unambiguously requires that any action by DNA against one of its owners requires, at a minimum, concurrence by a majority of its managers. Plaintiffs' motion for remand presents an interesting question: Under what circumstances must the citizenship of a limited liability company be ignored for purposes of federal diversity jurisdiction when it is alleged that the company's joinder as a plaintiff in an action against one of its members is fraudulent because the limited liability company was allegedly not authorized to pursue the legal action?

## FRAUDULENT JOINDER STANDARD

The removing Defendants bear a "heavy" burden of proving that DNA's joinder in this action was fraudulent. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). To determine whether a party has been fraudulently joined, the Court focuses on the pleadings at the time of removal and any affidavits submitted by the parties. *Legg v. Wyeth,* 428 F.3d 1317, 1322 (11th Cir. 2005). Any fact questions are evaluated in the light most favorable to the plaintiff. *Id.* at 1323. Uncertainties about the applicable law are also

resolved in the plaintiff's favor. *Pacheco de Perez* v. *AT&T Co.,* 139 F.3d 1368, 1380 (11th Cir. 1998). To establish fraudulent joinder in the present action, Defendants must demonstrate by clear and convincing evidence that there is no possibility that DNA can prove its cause of action against Defendants or that there is outright fraud in DNA's pleading of jurisdictional facts. *Henderson v. Washington Nat'l Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir. 2006).

DISCUSSION

The disposition of Plaintiffs' motion for remand depends on whether Defendants have demonstrated by clear and convincing evidence that DNA's president, Larry Galbraith, did not have authority to institute the present action against Defendants. It is well established under Georgia law that if an officer of a legal entity, including a limited liability company, did not have authority to institute a legal action on behalf of that entity, then that legal action must be dismissed. *See Glisson Coker, Inc.* v. *Coker,* 260 Ga. App. 270, 272-73, 581 S.E.2d 303, 305-06 (2003); *see also Stoker v. Bellemeade, LLC,* 272 Ga. App. 817, 830, 615 S.E.2d 1, 13 (2005), *rev'd in part on other grounds,* 280 Ga. 635, 631 S.E.2d 693 (2006). Therefore, if it is clearly established that Galbraith had no legal authority to institute this action on behalf of DNA without obtaining the concurrence of a majority of the managers, then there is no possibility that DNA can prove its cause of action against Defendants and/or DNA's pleading of jurisdictional facts in its Complaint is

5

fraudulent for purposes of federal diversity jurisdiction. Consequently, DNA would be fraudulently joined, and its citizenship must be ignored for diversity purposes.

It is undisputed that the management of DNA is to be conducted by a majority of its appointed managers. It is also undisputed that a majority of those managers did not expressly approve the filing of this action against Defendants. Furthermore, the Court finds that Defendants have clearly established that neither the Operating Agreement nor any past course of conduct authorized DNA's president, Larry Galbraith, to institute the present action without the express concurrence of a majority of the managers.

Plaintiffs' argument that Galbraith had retained counsel previously for unrelated legal matters misses the point. The question here is whether Galbraith, as DNA's president, was authorized to institute *this particular* legal action against Defendants, one of whom is a member and 50% owner of DNA. Even when the evidence is construed favorably to Plaintiffs, the answer to this question is clearly no. Although DNA's managers may have delegated to Galbraith, as president, the authority to handle some legal matters as part of the day-to-day affairs of the company, it would be an irrational legal stretch to conclude that this alleged delegation of authority would include authorization to sue one of its significant owners. *See Glisson Coker, Inc.,* 260 Ga. App. at 272, 581 S.E.2d at 305 (stating that even if president of a close

corporation did have authority to retain legal counsel to represent the corporation's interests, that authority did not extend to filing suit against the other 50% shareholder); *see also Stoker*, 272 Ga. App. at 830, 615 S.E.2d at 12-13 (finding that LLC comprised of two members, each with a 50% ownership interest and equal control, was not authorized to sue one of the members).

Defendants have carried their burden of establishing that DNA's joinder as a Plaintiff in this action was fraudulent for purposes of federal diversity jurisdiction. Therefore, DNA's citizenship must be ignored in determining whether Plaintiffs' motion for remand should be granted. *See Henderson*, 454 F.3d at 1281. Without DNA's presence in this action, complete diversity of citizenship exists among the parties, and Plaintiffs' motion for remand must therefore be denied. DNA is also dismissed as a party based upon fraudulent joinder.[1] *See Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007).

The Court recognizes that its holding today may place DNA in the unenviable predicament of not being able to seek a direct remedy through the courts for the violation of certain rights that one of its 50% owners feels should be vindicated through the judicial process. That predicament, however, is of DNA and its members' own

---

[1] Defendants have filed a motion to recover their costs pursuant to Federal Rule of Civil Procedure 41(d). Defs.' Rule 41(d) Motion for Costs, ECF No. 14. Rule 41(d) authorizes the Court in its discretion to order a plaintiff who previously dismissed an action that included the same claim against the same defendant to pay all or a part of the costs of the previous action. Fed. R. Civ. P. 41(d). The Court finds that such an award of costs is not warranted under the circumstances presented here. Accordingly, Defendants' motion is denied.

7

making.  They agreed to a management structure with the potential for creating such a legal impasse.  The Court's ruling of course does not preclude any of DNA's members from pursuing other available remedies under Georgia law that may be available given the apparent existing management deadlock.[2]

CONCLUSION

For the reasons stated in this Order, Plaintiffs' Motion for Remand (ECF No. 9) is denied.  Plaintiff DNA is dismissed from this action for improper and fraudulent joinder.  Defendants' Rule 41(d) Motion for Costs (ECF No. 14) is denied.

IT IS SO ORDERED, this 12th day of January, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[2] *See, e.g.*, O.C.G.A. § 14-11-801 *et seq.* (providing for derivative actions under the LLC Act); *see also Stoker*, 272 Ga. App. at 830 & n.3, 615 S.E.2d at 13 & n.3 (dismissing claims brought by LLC in its own name without authorization, without prejudice to derivative claims); *Duffey v. Wheeler*, 820 F.2d 1161, 1163 (11th Cir. 1987) (explaining alignment of parties in a shareholder derivative action where federal jurisdiction is based on diversity of citizenship).

8