IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

DENIM NORTH AMERICA HOLDINGS, *
LLC,
                                 *
     Plaintiff,
                                 *
vs.                                      CASE NO. 4:10-CV-45 (CDL)
                                 *
SWIFT TEXTILES, LLC,
GALEY & LORD, LLC, and           *
PATRIARCH PARTNERS, LLC,
                                 *
     Defendants.
                                 *

O R D E R

Presently pending before the Court is Defendants' Motion in Limine to Exclude Evidence and Argument Regarding Certain Measures of Damages (ECF No. 96).  For the reasons set forth below, the motion is granted in part and denied in part.

FACTUAL BACKGROUND

The Court previously recounted the facts regarding the transaction at issue in this case in its order on Defendants' summary judgment motion.  *Denim N. Am. Holdings, LLC v. Swift Textiles, LLC*, No. 4:10-CV-45 (CDL), 2011 WL 3962278 (Sept. 8, 2011).  Plaintiff Denim North America Holdings, LLC ("Holdings" or "Plaintiff") has two alternative claims remaining for trial: (1) its claim for rescission based on fraudulent inducement and (2) its claim for breach of fiduciary duty.  Holdings seeks the following types of compensatory damages:

(a)  Costs to effect a rescission of the transactional documents, which includes awarding Plaintiff (1) the 100% ownership of DNA that it had prior to the transaction, (2) the cost required to retrofit the DNA facility with the Boland Looms and additional costs of training new employees to operate a 24/7 production in the amount of $1,557,519 ($857,500 to install the Picanol looms into the DNA plant, $142,500 for related equipment in order to make the Picanol looms operational, and $507,559 in order to hire and train employees), (3) a return of dividends paid to Defendants in the amount of $801,500. Defendants are not entitled to return of the Picanol Looms because they were essentially traded for DNA's Tsudakoma Looms and Defendants were given the proceeds from the sale of those Looms, and the Picanol Looms provided no benefit to DNA.

(b)  Half of the difference in the sales margin based upon the 2007 sales forecasted that did not materialize because the Defendant's representations were false in the amount of $.50 per yard for the 20 Million yards sold in 2007, or $5,000,000.

(c)  Half of the revenues received by Defendants for the competing sales of denim in 2006-2007 based upon the sale of 10.5 Million yards of denim at $2.45 per yard, or $12,862,500.

Pretrial Order 22, ECF No. 120.  Holdings appears to contend that categories (a) and (b) would be the proper measure of damages for Plaintiff's rescission claim and that category (c) would be the proper measure of damages for Plaintiff's breach of fiduciary duty claim.  Defendants assert that Holdings is wrong on all counts.

2

I.    **Remedy for Fraudulent Inducement Claim**

Under Georgia law, a "party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Mitchell v. Backus Cadillac-Pontiac, Inc.*, 274 Ga. App. 330, 333, 618 S.E.2d 87, 92 (2005) (internal quotation marks omitted); *accord Weinstock v. Novare Grp., Inc.*, 309 Ga. App. 351, 354, 710 S.E.2d 150, 154 (2011). Holdings elected to take the "rescind and sue" option and is not seeking to affirm the contract. Holdings seeks two basic types of compensatory damages for its fraudulent inducement claim: (1) costs to effect a rescission of the transaction, and (2) damages in the amount of what Holdings would have earned had Defendants performed under the transaction contracts.

As the Georgia Court of Appeals acknowledged, the measure of damages for the "affirm and sue" option is "quite different" from the measure of damages for the "rescind and sue" option. *Mitchell*, 274 Ga. App. at 333, 618 S.E.2d at 92. For the "affirm and sue" option, the proper measure of damages is the value of what was promised. *See, e.g., id.* (noting, where a car buyer sued the seller for fraud, that "affirm and sue" damages would be "the difference between the actual value of the property at the time of purchase and what the value would have

3

been if the property had been as represented" (internal quotation marks omitted)); *Rodrigue v. Mendenhall*, 145 Ga. App. 666, 667, 244 S.E.2d 598, 599-600 (1978) (finding, where the buyer of printing equipment sued the seller for fraud and affirmed the contract, that the measure of damages is benefit of the bargain damages plus "damages arising directly and consequential" to the fraud (internal quotation marks omitted)).

For the "rescind and sue" option, the proper measure of damages is "the amount of money necessary to restore [the plaintiff] to the status prior to the transaction," minus a setoff for any value derived by the plaintiff as a result of the transaction. *Mitchell*, 274 Ga. App. at 339, 618 S.E.2d at 96; *accord Brown v. Techdata Corp.*, 238 Ga. 622, 629-30, 234 S.E.2d 787, 793 (1977) (per curiam). "When a contract is rescinded, the parties are not to be left where the rescission finds them. The original status must be restored[.]" *Id.* (internal quotation marks omitted). Where the fraud is "sufficiently aggravating," punitive damages are authorized in addition to the restitution-type damages that are necessary to restore the pre-transaction status. *Id.* at 630, 234 S.E.2d at 793.

The simple rescission case typically involves the sale of a car. *See e.g. Brown v. Garrett*, 261 Ga. App. 823, 584 S.E.2d 48 (2003). In such a case, the buyer would be required to return the lemon car he was fraudulently induced to buy, but he would

be entitled to recover the purchase price.  *Garrett*, 261 Ga.
App. at 823-24, 584 S.E.2d at 49; *accord Mitchell*, 274 Ga. App.
at 339, 618 S.E.2d at 96.  The *Techdata Corp.* case demonstrates
the application of rescission principles in a more complicated
commercial setting similar to the present case*.*  In *Techdata
Corp.*, the plaintiff purchased the assets of a printing business
and later sought equitable rescission of the contract, alleging
that the defendant had fraudulently induced the plaintiff to
enter the contract.  In connection with the sale, the plaintiff
paid $50,000 to the defendant and paid $11,500 in commissions to
a broker who arranged the sale.  *Techdata Corp.*, 238 Ga. at 623,
234 S.E.2d at 789.  The plaintiff sought equitable rescission of
the contract and a restitution award of $61,500, plus punitive
damages.  *Id.*  The jury returned a verdict ordering rescission
of the contract, plus $50,000 in punitive damages.  *Id.* at 629,
234 S.E.2d at 792-93.  "To effectuate the rescission ordered by
the jury, the trial judge" imposed "actual damages" in the
amount of $49,658.  *Id.*, 234 S.E.2d at 793.  This amount was
calculated by adding what the plaintiff put into the transaction
($50,000 to the seller plus $11,500 commission) minus a credit
due to the defendants for inventory and equipment the plaintiff
sold or disposed of ($11,842).  *Id.*  The trial court further
ordered that the other obligations in connection with the
purchase be canceled and ordered that the remaining assets be

tendered back to the defendant. *Id.* The Georgia Supreme Court found no error in this remedy. *Id.* The court found that the damage award "was in the nature of restitution designed to place the parties in the position they were in before entering into the contract. . . . had the trial judge not awarded damages to the [plaintiff], the jury verdict ordering a rescission would have been partially defeated." *Id.* at 630, 234 S.E.2d at 793.

In the present case, Defendants contend that "Plaintiff's sole remedy for the alleged fraudulent inducement is to rescind the contracts that it entered into with Defendant Swift Textiles, LLC." Pretrial Order 22. Defendants further argue that evidence of the costs associated with implementing the transaction—such as the costs of installing the new looms and the dividends DNA paid to Swift—are irrelevant to Plaintiff's claim. Defendant contends that these expenditures were made by DNA, not Holdings, and that any claims arising out of these expenditures belong to DNA and not Holdings. The Court disagrees. As *Techdata Corp.* teaches, the proper measure of rescission damages is "in the nature of restitution designed to place the parties in the position they were in before entering into the contract." *Techdata Corp.*, 238 Ga. at 630, 234 S.E.2d at 793. Presumably, Holdings will produce evidence that it owned 100% of DNA just prior to the transaction with Defendants, and that as a result of that transaction, Holdings essentially

6

conveyed half of its interest in DNA to Swift while retaining the other 50% ownership.  Therefore, if Holdings can convince the jury that it was fraudulently induced into that transaction and that it timely sought rescission, it would be entitled to be placed in the position it would have been in prior to the fraudulent inducement.  Under equitable principles, the Court could restore 100% ownership of DNA back to Holdings, and the jury could award restitution-type damages necessary to put Holdings back in the position it would have occupied had it never conveyed the 50% interest to Swift.  This type of remedy is similar to allowing the buyer in *Techdata Corp.* to recover damages to put it back in the position it would have occupied had it never purchased the assets of the printing business.  In *Techdata Corp.*, the buyer would not have paid $50,000 for the printing business assets, and it also would not have paid $11,500 to a broker for arranging the deal, so it was entitled to recover those costs.  *Id.* at 629, 234 S.E.2d at 793.  It is important to recognize that the buyer in *Techdata Corp.* was not allowed to keep the money it earned from selling the printing business's inventory and assets, and the seller was entitled to a credit for that amount.  *Id.*  The buyer also had to tender the remaining assets back to the seller. *Id.*

Here, under the rationale of *Techdata Corp.*, if Holdings prevails on its fraudulent inducement claim, it would be able to

recover what it put into the transaction minus what it gained in the transaction that cannot be returned to Swift.  Had the parties not entered into the contract, Holdings would still own 100% of DNA, would not have paid a dividend to Swift, and would not have had any expenditures associated with combining DNA with Swift.  Defendants would, of course, be entitled to a return of any assets they contributed that can be returned, as well as a setoff in the amount of the value of any assets they contributed to the venture that would now be impossible or impracticable for Holdings to return.  For these reasons, the Court declines to exclude evidence of the costs incurred in installing the new looms and evidence of the dividends paid to Swift.

In addition to restitution-type damages incident to the rescission, Holdings also seeks damages equal to the amount it would have earned had Defendants performed under the contract because "it was in the contemplation of the parties that DNA would suffer financial harm if the projections were fraudulent." Pl.'s Resp. to Defs.' Mot. in Limine Regarding the Exclusion of Certain Measures of Damages 3-4, ECF No. 106 [hereinafter Pl.'s MIL Resp.].  Given that Holdings has elected the "rescind and sue" approach, however, it cannot recover expectation or "benefit of the bargain" damages.  Such damages are not necessary to put Holdings back in the position it would have occupied had it never entered the joint venture.  Permitting

such damages, which are based on what Holdings alleges it would have earned had the contract been performed, would be inconsistent with finding that the contract is void.

Holdings argues that Georgia law permits it to rescind the transaction *and* recover expectation damages.  As discussed above, the Georgia courts generally permit rescission damages "in the nature of restitution designed to place the parties in the position they were in before entering into the contract," plus punitive damages if warranted.  *Techdata Corp.*, 238 Ga. at 630, 234 S.E.2d at 793.  Holdings has not cited a single case in which the court authorized both rescission and expectation damages.  In support of its argument that expectation damages are also allowed, Holdings cites three cases.[1]  According to Holdings, its best case is *City Dodge, Inc. v. Gardner*, 232 Ga. 766, 208 S.E.2d 794 (1974), which Holdings contends stands for the proposition that "Georgia fraud law clearly provides for rescission *and* tort damages for fraud and deceit."  Pl.'s MIL Resp. 1.

---

[1] At the hearing on this motion, Holdings also cited the Court to *Weinstock* as one of its best cases in support of its claim that it can recover both rescission and expectation damages.  *Weinstock* recites the general rule regarding the two options for fraudulent inducement plaintiffs.  *Weinstock*, 309 Ga. App. at 354, 710 S.E.2d at 154.  In *Weinstock*, though, the plaintiffs did not seek to rescind the contract in a timely manner, and the plaintiffs' fraud claim failed due to a merger clause in the contract.  *Id.* at 356, 710 S.E.2d at 155-56. *Weinstock* does not address the proper measure of damages for a rescission claim.

Quoting Georgia's Uniform Commercial Code, the Georgia Supreme Court in *City Dodge* stated that

> "Remedies for material misrepresentation or fraud include all remedies available under [the Uniform Commercial Code] for nonfraudulent breach. Neither rescission or a claim for a rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy."

*City Dodge*, 232 Ga. at 768, 208 S.E.2d at 796-97 (quoting Ga. Code Ann. § 109A-2-721 (1933), now codified at O.C.G.A. § 11-2-721). The Court of Appeals noted that the UCC commentary on this code section states:

> "Thus the remedies for fraud are extended by this section to coincide in scope with those for non-fraudulent breach. This section thus makes it clear that neither rescission of the contract for fraud nor rejection of the goods bars other remedies unless the circumstances of the case make the remedies incompatible."

*Id.* at 768, 208 S.E.2d at 797 (quoting Ga. Code Ann. § 109A-2-721 (1933) cmt., now codified at O.C.G.A. § 11-2-721).

The *City Dodge* court did not make any explicit ruling on the proper measure of damages when a contract is rescinded. The Court held that Georgia's Uniform Commercial Code "does not preclude an action in tort based upon fraudulent misrepresentation inducing the sale where the plaintiff proves by a preponderance of the evidence the elements of fraud and deceit recognized under Georgia law, and that such a tort action cannot be controlled by the terms of the contract itself." *Id.*

10

at 770, 208 S.E.2d at 798.   Nowhere in *City Dodge* does the court

say that a plaintiff seeking rescission of a contract is

entitled to recover restitution *plus* expectation damages.

Rather, *City Dodge* notes that a contract rescinded due to

antecedent fraud is "void."   *Id.* at 770, 208 S.E.2d at 797.   If

a contract is void, then it would defy logic to permit damages

that are rooted in the contract itself.

Reading *City Dodge* in light of the cases that explicitly

address rescission damages, it is clear that the damages the

Georgia courts contemplate in a "rescind and sue" case include

(1) the amount necessary to put the aggrieved party in the

position he would have occupied had he not entered the contract,

plus (2) punitive damages, if warranted.   *Techdata Corp.*, 238

Ga. at 630, 234 S.E.2d at 793; *accord Patray v. Nw. Pub., Inc.*,

931 F. Supp. 865, 873 (S.D. Ga. 1996) (equating "fraud" damages

in rescission action with punitive damages).

The other two cases relied upon by Plaintiff's counsel do

not support a different conclusion.   Holdings cites *Rodrigue v.

Mendenhall*, 145 Ga. App. 666, 244 S.E.2d 598 (1978) for the

proposition that "fraud damages include benefit of the bargain

damages, and in addition, all damages arising directly and

consequentially to a tort."   Pl.'s MIL Resp. 4.   *Rodrigue* was

not a rescission case; the plaintiff elected to affirm the

contract, keep the fruits of the contract, and sue for damages.

11

*Rodrigue*, 145 Ga. App. at 667, 244 S.E.2d at 599.  Therefore, the court's ruling on the proper measure of damages has no application in this case, which is a rescission case.  Holdings cites *Bill Parker & Assocs. v. Rahr*, 216 Ga. App. 838, 456 S.E.2d 221 (1995) for the proposition that "special damages in tort actions are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach."  Pl.'s MIL Resp. 4.  *Rahr* was a legal malpractice case and concerned the types of damages authorized in such an action.  *Rahr*, 216 Ga. App. at 841, 456 S.E.2d at 224.  The portion of the case on which Holdings relies has no application here; it addresses Georgia's statutes governing contracts, including O.C.G.A. § 13-6-2 and O.C.G.A. § 13-6-9.

For all of these reasons, the Court concludes that Holdings may not seek damages based on the "2007 sales forecasted that did not materialize."  The Court does *not* hold that evidence of the discrepancy between forecasted sales and actual sales is irrelevant for *some* purpose.  The Court simply finds that it is not relevant to prove damages.

## II.  Remedy for Breach of Fiduciary Duty Claim

Holdings also pursues an alternative claim for breach of fiduciary duty.  Holdings contends that the proper measure of damages for this claim is "[h]alf of the revenues received by

12

Defendants for the competing sales of denim in 2006-2007."
Pretrial Order 22.   In other words, Holdings contends that
disgorgement is the proper remedy for a breach of fiduciary duty
by a joint venturer.   In support of this argument, Holdings
relies on *Jennette v. National Community Development Services,
Inc.*, 239 Ga. App. 221, 520 S.E.2d 231 (1999).   *Jennette*
involved claims by a principal against its former agent: the
plaintiff was a business that created and managed fundraising
campaigns for nonprofit entities, such as colleges.   The
defendant was an independent contractor whose job was to develop
business for the plaintiff; in return, he would receive ten
percent of the gross revenue.   *Id.* at 221-22, 520 S.E.2d 233.
After securing contracts on behalf of the plaintiff, the
defendant formed his own company and began telling plaintiff's
clients that his company was a division of plaintiff.   Those
clients signed on with the defendant, and he received $235,000
in gross receipts from them.   *Id.* at 222-23, 520 S.E.2d at 233-
34.   The *Jennette* court found that the defendant was the
plaintiff's agent and that he "was under a duty not to make a
personal profit from the principal's business, or from the
knowledge obtained from the relationship, to the principal's
injury."   *Id.* at 223-24, 520 S.E.2d at 234.   The court stated
that the "breach of fiduciary duty negates the unfaithful
agent's right to any compensation and renders him liable to his

13

principal for his dealings with the latter's property." *Id.* at
224-25, 520 S.E.2d at 235.   Relying on the Georgia statute
regarding commission and expenses of an agent, the Court of
Appeals concluded that it was not error for the trial court to
order   disgorgement   of   the   gross   revenue   the   agent
misappropriated.   *Id.* at 225, 520 S.E.2d at 235 (citing
O.C.G.A. § 10-6-31).

Unlike *Jennette*, this case does not involve an agent-
principal relationship, so O.C.G.A. § 10-6-31 does not apply
here.   The case law appears to be fairly thin on the measure of
damages   outside   the   agent-principal   context.   The   parties
pointed the Court to *McMillian v. McMillian*, 310 Ga. App. 735,
713 S.E.2d 920, 2011 WL 2685722 (2011), in which one business
partner sued the other for breach of fiduciary duty, and the
question on appeal was the scope of discovery.   The defendant
argued that his financial records were not relevant to the
measure of damages because the proper measure of damages was the
value   of   what   the   partnership   would   have   earned   from   the
business opportunity.   *Id.* at *2.   The court observed that, in
the partnership context, "when a partner wrongfully appropriates
a prospective business opportunity of his partnership to his own
use or that of another, the remaining partners, who are deprived
of an opportunity to profit from the misappropriated business
opportunity, may recover their share of the profits that the

14

partnership would have earned from the business opportunity." *Id.* at *3; *accord Gaines v. Crompton & Knowles Corp.*, 190 Ga. App. 863, 864, 380 S.E.2d 498, 500 (1989) (finding that the buyer in a case where the seller breached a covenant not to compete could recover net profits lost through the seller's conduct plus damages for loss of customers and employees).  The *McMillian* court also noted that in some cases, "disgorgement of ill-gotten revenues or profits may be an appropriate remedy for a breach of fiduciary duty" but declined to decide whether it was an appropriate remedy in the case before it.  *McMillian*, 2011 WL 2685722 at *3-*4.  The court concluded that no matter what the proper measure of damages was, the defendant's financial information was potentially relevant and therefore discoverable.  *Id.* at *4.

The Court finds that if Holdings prevails on its breach of fiduciary duty claim, the appropriate measure of damages is the measure of damages described in *McMillian* that has been approved in the partnership context: Plaintiff's share of the profits that DNA would have earned had Swift not sold its denim in competition with DNA.  *Id.* at *3; *see also City of Atlanta v. Atlantic Realty Co.*, 205 Ga. App. 1, 4, 421 S.E.2d 113, 117 (1992) (finding that a member of a joint venture that breaches its duty not to disrupt or abandon the venture to obtain benefits for itself can become liable to the other members for

the damages they sustained because of the breach). This does
not, however, mean that evidence of Swift's revenues from the
allegedly competing sales is irrelevant and must be excluded.
*See McMillian*, 2011 WL 2685722 at *4 (noting that one partner's
financial records could shed light on what the partnership would
have earned had there been no misappropriation of the
partnership opportunity). Accordingly, the Court declines to
exclude evidence of Swift's revenues from the allegedly
competing sales.

### CONCLUSION

As discussed above, Defendants' Motion in Limine to Exclude
Evidence and Argument Regarding Certain Measures of Damages (ECF
No. 96) is granted in part and denied in part. Defendants asked
the Court to exclude evidence of (1) costs incurred in
installing the new looms, (2) dividends paid to Swift, (3) the
discrepancy between forecasted sales and actual sales, and (4)
Defendants' revenues from competing sales. The Court declines
to exclude evidence of the costs incurred in installing the new
looms and the dividends paid to Swift. The Court finds that
evidence of the discrepancy between forecasted sales and actual
sales is not relevant to the issue of damages, but the Court
declines to exclude the evidence because it may be relevant on
other issues. The Court finds that Defendants' revenue from
competing sales is not the proper measure of damages on

16

Plaintiff's breach of fiduciary duty claim but declines to exclude the evidence because it may be relevant on other issues.[2]

IT IS SO ORDERED, this 6th day of October, 2011.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[2] The parties should inform the Court by 5:00 P.M. on October 11, 2011 of any modifications to their deposition designations and objections to designations in light of today's ruling.